NEWBURG, Respondent, vs. UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant.

PECK, Plaintiff and Respondent, vs. HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Respondent, UNITED STATES FIDELITY & GUARANTY COMPANY, Cross-complainant and Appellant.

*February 9—March 8, 1932.*

For the appellant there was a brief by *George H. Gordon, Law & Gordon* of La Crosse, and oral argument by *Stanley G. Gordon.*

*Lawrence J. Brody* of La Crosse, for the respondent Newburg.

For the respondent Hartford Accident & Indemnity Company there was a brief by *Lees & Bunge* of La Crosse, and oral argument by *Geo. W. Bunge.*

FRITZ, J.   The plaintiff, Agnes Peck, sustained injuries on September 9, 1928, in a collision between two automobiles, one of which was operated by Oscar Mydels and the other by Richard Newburg.   Both of them were sued by her, and after recovering judgment against those defendants she brought an action to recover the amount of that judgment from the Hartford Accident & Indemnity Company and the United States Fidelity & Guaranty Company. The right to recover against the Hartford Accident & Indemnity Company was based upon a policy of insurance which it had issued to indemnify Mydels against liability sustained

by him by reason of his negligent driving of the automobile, which he was operating when Agnes Peck was injured. The right to recover against the United States Fidelity & Guaranty Company was based upon a similar policy which it had issued on July 29, 1928, in the name of Jacob Newburg as the insured, in relation to the automobile which Richard Newburg was operating when the collision occurred. The Hartford Accident & Indemnity Company admitted its liability to Agnes Peck by virtue of its policy issued to Mydels, but by cross-complaint it asserted that the United States Fidelity & Guaranty Company, by reason of its policy issued in the name of Jacob Newburg, was equally liable for the judgment which Agnes Peck had theretofore recovered, and that the United States Fidelity & Guaranty Company should be adjudged liable for one-half of that judgment.

Richard Newburg also commenced an action against the United States Fidelity & Guaranty Company to recover, under the policy which it had issued in the name of Jacob Newburg, as insured, the expense which Richard Newburg had incurred in defending the action in which Agnes Peck had recovered judgment against him and Oscar Mydels. Richard Newburg, before defending that action by counsel of his own selection, had duly tendered the defense thereof to the United States Fidelity & Guaranty Company, which refused to provide for such defense on his behalf.

As defense to the respective complaints of Agnes Peck and Richard Newburg and the cross-complaint of the Hartford Accident & Indemnity Company, the United States Fidelity & Guaranty Company denied liability under the policy which it had issued on July 29, 1928, in relation to the automobile operated by Richard Newburg when the collision occurred. In its answers, which were not entirely identical, the United States Fidelity & Guaranty Company, in substance and effect, asserted as defense that on July 29, 1924,

it had issued its policy of insurance, covering the automobile in question, to Jacob Newburg, who then and there falsely and fraudulently represented to this defendant that he was then engaged in the retail shoe business in La Crosse and was the owner of that automobile; that this defendant, relying upon that representation, issued its policy to Jacob Newburg, and thereafter, on July 29, 1925, July 29, 1926, July 29, 1927, and July 29, 1928, the said insurance was renewed by this defendant, and on said last named date it issued its policy of insurance, which was uncanceled on September 9, 1928; that this defendant is now informed and believes that said automobile was in truth and in fact not owned by Jacob Newburg, and was not the property of Jacob Newburg, but was owned by his son Richard Newburg, who now is, and for many years prior to July, 1924, was engaged in the sale of intoxicating liquors, and not in the retail shoe business, and who was, prior to the issuance of said policy on July 29, 1924, convicted of a violation of the prohibition law; that said automobile was not the property of Jacob Newburg; and that this defendant issued no policy covering any automobile owned by the said Richard Newburg. In the schedule of statements in the policy there were the following statements: "Name of assured, Jacob Newburg;" "Assured's occupation or business is retail shoe business;" "The automobiles herein described will be used for the following purposes: private and business;" and "The interest of the named assured in the automobiles herein described is that of unconditional and sole ownership except as follows: No exceptions." The policy also had a provision which extended the coverage to any person while legally operating the automobile, providing such use or operation was with permission of the named assured. There is no contention that Richard Newburg was operating the automobile illegally or without the permission of Jacob Newburg.

Upon the trial the jury found as follows:

(1) On July 29, 1928, Richard Newburg was not sole owner of the automobile in question;

(2) Jacob Newburg was (a) the owner of the legal title to that automobile, and (b) the holder of the certificate of title thereto, as security for indebtedness owing to him by Richard Newburg;

(3) Pettingill, the insurance agent through whom the policy was procured, knew, at the time of issuing the policy, the condition of the title to the automobile and the beneficial interest of Richard Newburg therein;

(4) Richard Newburg, in procuring the policy to be issued, did not make a representation to the effect that the automobile was owned by Jacob Newburg, which was false and which was made with intent to deceive; or which was a misrepresentation as to a matter which increased the risk or contributed to the loss.

Upon that verdict, in conjunction with other undisputed facts, the learned circuit judge held that the United States Fidelity & Guaranty Company was liable under its policy to indemnify Richard Newburg for the expense of his defense in the action commenced against him by Agnes Peck; that she was entitled to recover of that defendant and also the Hartford Accident & Indemnity Company (which by its answer had admitted its liability to her) the amount of her judgment against Richard Newburg and Oscar Mydels; that it was the duty of each of the defendants, the United States Fidelity & Guaranty Company and the Hartford Accident & Indemnity Company, to pay one-half of that judgment in favor of Agnes Peck; and that the Hartford Accident & Indemnity Company was entitled to recover of the United States Fidelity & Guaranty Company all sums in excess of such one-half, which it might be required to pay to satisfy that judgment. Judgments were entered accordingly, and the United States Fidelity & Guaranty Company appealed.

Appellant contends that the jury's findings are contrary to the evidence. Although, upon reviewing the record, we find considerable conflict in the testimony, it is our conclusion that there is evidence which fairly admits of the findings of the jury. While it is undisputed that the automobile was purchased in 1924 by Richard Newburg, and that he paid the annual state registration fee, it is likewise undisputed that upon making that purchase Richard put the legal title in the name of Jacob Newburg, and had the official certificate of title, as well as the annual licenses, issued to Jacob Newburg. Appellant contends that Jacob Newburg never owned any interest in the automobile, and that the ownership was falsely represented to be in Jacob Newburg to deceive appellant, who would not have issued a policy to Richard Newburg because he was engaged in the unlawful sale of liquor. On the other hand, to establish the financial basis for an interest in Jacob Newburg, there was testimony, which it was within the province of the jury to consider, that at the time of the purchase in 1924, as well as since, there existed an indebtedness of Richard to his father, to secure which Richard lawfully placed and left the title to the automobile in his father's name. Under the circumstances, and particularly after approval thereof by the trial court, there is no occasion to disturb the jury's findings as to the ownership of the automobile and the status of the title, and that no representation as to such ownership was made by Richard Newburg which was false or made with intent to deceive, or which was a misrepresentation as to a matter which increased the risk or contributed to the loss. However, whether, in fact, Richard Newburg was the sole owner, or Jacob Newburg was the owner of the legal title, or the latter held the certificate of title as security for the indebtedness owing by Richard Newburg, the actual status of the title, as between Richard and Jacob Newburg, was of no legal consequence in this litigation, if, as the jury found, Pettingill knew the condition of the title

to the automobile and the beneficial interest of Richard Newburg therein. Likewise, as to that finding. that Pettingill had knowledge as to the true ownership and condition of the title, the record discloses ample proof to sustain the verdict. Thus, in support of that finding, there is proof that when Richard Newburg applied for the policy in 1924 he told Pettingill that he was purchasing the car and was to operate the car, but that the title had to be in his father's name because of a loan; that Pettingill then said that in that event the insurance would also have to be in the father's name; that when Pettingill issued the first policy in 1924 he sent it by mail to Richard Newburg, addressed to the roadhouse at which the latter conducted his business, and inclosed therewith a letter addressed to Richard Newburg, in which he stated that the policy covered "your Dodge coupé;" that Pettingill knew that Richard Newburg paid the premiums in 1927 and 1928; that Pettingill collected the latter premium in 1928 at Richard Newburg's bar; that Pettingill knew that Richard Newburg was driving the car, but did not consider that fact as affecting the risk; and that appellant adjusted liability sustained in an accident in July, 1926, for which the report to appellant was signed by Jacob Newburg, and stated that Jacob Newburg was the owner of the car and Richard Newburg was driving it.

As Pettingill was appellant's general agent, through whom the policies, covering that automobile, were procured in the years 1924 to 1928, inclusive, his knowledge as to the true condition of the title and the beneficial interest of Richard Newburg. therein was the knowledge of the company. Sec. 209.08 (1), Stats., which is applicable, provides:

"Knowledge of an agent of a fire, casualty or marine insurance company at the time a policy is issued or an application made shall be knowledge of the company, and

any fact which breaches a condition of the policy and is known to the agent when the policy is issued or the application made shall not void the policy or defeat a recovery thereon in the event of loss."

The knowledge with which appellant was chargeable, when its first policy was issued, it continued to be chargeable with at the time of the subsequent renewals. *Farley v. Spring Garden Ins. Co.* 148 Wis. 622, 134 N. W. 1054. Under the circumstances, appellant is estopped from asserting that the ownership of the automobile was otherwise than Pettingill, with full knowledge of the actual status, stated the title to be in the policies, which he issued annually for the express purpose of affording insurance protection to Richard Newburg, while operating that automobile with the consent of Jacob Newburg. The circumstances call for the application of the principle "that one person cannot assume a position in his business relations with another in respect to a transaction of a pecuniary nature upon which such other, acting reasonably, has a right to rely, and after such other has so acted change his position to that other's prejudice and obtain judicial aid to enable him to effectuate his fraudulent purpose." *Welch v. Fire Asso.* 120 Wis. 456, 462, 98 N. W. 227. The appellant is estopped from breaching good faith with its patron by issuing to him a policy and taking his money therefor with knowledge of conditions rendering it at once void. *Welch v. Fire. Asso., supra; Farley v. Spring Garden Ins. Co., supra; Spohn v. National Fire Ins. Co.* 190 Wis. 446, 209 N. W. 725. This court arrived at the same result, under similar circumstances, in other cases, but based its decision on the doctrine of waiver instead of estoppel *in pais. Goss v. Agricultural Ins. Co.* 92 Wis. 233, 65 N. W. 1036; *Schultz v. Caledonian Ins. Co.* 94 Wis. 42, 68 N. W. 414; *McDonald v. Fire Asso.* 93 Wis. 348, 67 N. W. 719; *St. Clara Female Academy v. N. W. Nat. Ins. Co.* 98 Wis. 257, 73 N. W. 767; *Metcalf*

*v. Mutual Fire Ins. Co.* 132 Wis. 67, 112 N. W. 22; *Siemers v. Meeme Mut. Home P. Ins. Co.* 143 Wis. 114, 126 N. W. 669; *Speiser v. Phœnix Mut. L. Ins. Co.* 119 Wis. 530, 97 N. W. 207; *Farley v. Spring Garden Ins. Co., supra.* It follows that appellant is liable in these actions as provided in the judgments from which it has appealed.

Appellant further assigns error because, upon the actions being reached for trial, the court ordered the consolidation thereof for the purpose of trial, notwithstanding the objection of appellant that the actions involved different parties; that it would give to the parties who were adverse to appellant the right of cross-examination of witnesses, which they would otherwise have to call as their own witnesses; and that such consolidation would be prejudicial to appellant. Such an order for consolidation is commendable unless substantial rights of the litigants are prejudiced thereby. We do not believe that the order under review was prejudicial to appellant.

Appellant contends that the order gave to Agnes Peck and the Hartford Accident & Indemnity Company, in the action commenced by Agnes Peck, the advantage of examining Richard Newburg adversely and by leading questions, which they would not have had if there had been separate trials, and they could not call and examine him as an adverse party. However, those parties did not resort to that advantage. They did not call Richard Newburg as a witness. The plaintiff, as well as the Hartford Accident & Indemnity Company, rested immediately upon stipulating as to certain facts, without calling Richard Newburg. Then appellant called him as its witness, and thereupon the other parties, of course, had the right to cross-examine him, just as they would have had on separate trials if there had been no order for consolidation.

*By the Court.*—Judgments affirmed.